UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                                                  )   Case No. _____
                                                                       )
                                                                       )   NOTICE OF ***PRELIMINARY***
                                                                       )   HEARING ON MOTION
                                                                       )      FOR USE OF CASH COLLATERAL
                                                                       )      TO OBTAIN CREDIT
Debtor(s)                                                              )   *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a
Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached;
and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

      a.  The immediate and irreparable harm that will come to the estate pending a final hearing is
      _____.

      b.  The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed
      above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are:
_____.

3.    A ***PRELIMINARY*** HEARING on the motion WILL BE HELD ON _____ AT _____
IN _____.
Testimony will be received if offered and admissible.

4.    If you WISH to OBJECT to the motion, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:
(1) ATTEND the preliminary hearing; AND/OR (2) FILE with the Clerk of Court (i.e., if the 5-digit portion
of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it
begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (a) a written response,
which states the facts upon which you will rely, AND (b) a certificate showing a COPY of the response
was given DIRECTLY TO the Judge, and served on the U.S. Trustee and the party named in pt. 2 above.
See Local Form #541.51 for details.

5.    On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on
the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee
elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all
creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S.
Trustee; and all affected lien holders whose names and addresses used for service are as follows:

_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (2/13/09)      **LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER**

1    **Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
       Direct Dial:  (503) 802-2013
2        Facsimile:    (503) 972-3713
         E-Mail:      al.kennedy@tonkon.com
3    **Michael W. Fletcher**, OSB No. 010448
         Direct Dial:  (503) 802-2169
4        Facsimile:    (503) 972-3869
         E-Mail:      michael.fletcher@tonkon.com
5    **TONKON TORP** LLP
     1600 Pioneer Tower
6    888 S.W. Fifth Avenue
     Portland, OR  97204
7
         Attorneys for Debtor
8

9

10                  UNITED STATES BANKRUPTCY COURT

11                        DISTRICT OF OREGON

12   In re                                 Case No. 11-37319-elp11

13   Western Communications, Inc.,         **DEBTOR'S MOTION FOR**
                                           **AUTHORITY TO USE CASH**
14                      Debtor.            **COLLATERAL**

15   _____       *EXPEDITED HEARING REQUESTED*

16              Pursuant to 11 U.S.C. § 363(c) and Bankruptcy Rule 4001(b), Western

17   Communications, Inc., an Oregon professional corporation ("Debtor" or "Debtor-In-

18   Possession") moves this Court for an order (1) authorizing Debtor to use cash collateral on a

19   temporary basis until a final hearing can be held on this motion; and (2) after a final hearing

20   held pursuant to Bankruptcy Rule 4001(c)(2), a final order authorizing Debtor to use cash

21   collateral during the pendency of this case.  In support of this motion, Debtor states as

22   follows:

23              1.    On August 23, 2011 (the "Petition Date"), Debtor filed its voluntary

24   petition for relief under Chapter 11 of the United States Bankruptcy Code.

25   * * *

26   * * *

**Page 1 of 5** -    DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

1    2.    Debtor has continued in possession of its property and is continuing to

2    operate and manage its business as Debtor-In-Possession pursuant to 11 U.S.C. §§ 1107(a)

3    and 1108.

4    3.    This court has jurisdiction over this matter pursuant to 28 U.S.C.

5    §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

7    4.    No request has been made for the appointment of a trustee or an

8    examiner, and no official creditors' committee has yet been established in this case.

9    5.    Debtor is an Oregon corporation headquartered in Bend, Oregon.

10   Debtor currently employs approximately 100 full time salaried employees and 280 hourly

11   employees.  Debtor also utilizes more than 150 independent contractors for the distribution

12   and delivery of its newspapers.

13   6.    Debtor is a small market newspaper, niche publishing, printing and

14   digital media company with publications spread throughout Oregon (six publications) and

15   California (two publications).  Debtor produces and publishes the Bend Bulletin, the Baker

16   City Herald, the La Grande Observer, the Redmond Spokesman, the Brookings Curry

17   Coastal Pilot, the Crescent City Daily Triplicate, and the Sonora Union Democrat.  Debtor

18   also publishes the Central Oregon Nickel Ads in Bend, Oregon.  Debtor is committed to

19   community journalism and believes in the invaluable role and responsibility of community

20   newspapers.

21   7.    Debtor's newspapers are the dominant media in their markets.  The

22   largest market served by Debtor is Bend, Oregon, which had seen excellent growth until the

23   recent recession.  The other markets served by Debtor are much smaller low to no growth

24   areas.  The recession hit Bend much harder than the other markets, primarily because of the

25   significant decline in Bend real estate values.  The Bend Bulletin and related publications had

26   * * *

**Page 2 of 5** -    DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    done an excellent job in capitalizing on the advertising base for local real estate, which meant

2    they had farther to fall when the real estate market declined.

3              8.    Debtor produces high quality newspapers that regularly receive

4    industry awards for journalistic excellence.  For example, in 2000 The Union Democrat won

5    the nationally prestigious Payne Award for ethics in journalism from the University of

6    Oregon.  The Bend Bulletin received the General Excellence Award from the Oregon

7    Newspaper Publishers Association, where it competes in the same category with newspapers

8    many times its size—including the Oregonian, and the reproduction quality of The Bulletin

9    has won the Northwest Print Quality contest seven times in the last nine years (finishing

10    second the other two years).  The LeGrande Observer won the General Excellence Award in

11    its category seven of the last 10 years.

12              9.    Due primarily to the poor real estate market in Bend and the recession

13    in general, Debtor's revenues (primarily from advertising) dropped significantly from 2006 to

14    2010.  Debtor has reacted to the declining revenues by implementing numerous and

15    significant cost controls, while at the same time maintaining the high quality and integrity of

16    its publications.

17              10.    Although the recession has taken a significant toll on Debtor, Debtor

18    believes Debtor and Debtor's markets, particularly Bend, will rebound and have excellent

19    long-term growth prospects.  Of particular note is the Bend Bulletin circulation growth,

20    which is directly countering national newspaper circulation trends.  The Bulletin total paid

21    circulation (including newsstand sales) increased nearly 22% from 2003 through 2010,

22    compared to a decline of 17% nationwide.

23              11.    In late 2008/early 2009, Debtor's lender, Bank of America, N.A.

24    ("B of A") declared Debtor in default of certain financial covenants set forth in its loan

25    documents.  In June 2009, Debtor entered into a forbearance agreement with B of A, and

26    continued to operate under the forbearance agreement (as extended from time to time) until

**Page 3 of 5** -    DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

1    June 23, 2011, at which time the forbearance agreement expired.  Debtor made all scheduled

2    payments to B of A through June 30, 2011.

3              12.     B of A claims a security interest in substantially all of Debtor's

4    personal property and in certain real property of Debtor.

5              13.     To preserve and maintain the assets of this bankruptcy estate and to

6    preserve the value of Debtor as a going concern, Debtor requires the use of B of A's cash

7    collateral.

8              14.     Debtor has prepared a 13-week cash collateral budget (attached hereto

9    as Exhibit 1) setting forth the amount necessary for Debtor's continued operations prior to the

10   final hearing and during such 13-week period.

11             15.     Without the use of cash collateral, Debtor has insufficient funds to

12   meet its expenses and other payments set forth in the budget.  Debtor has an immediate need

13   to use B of A's cash collateral to pay its vendors, employees, benefit plans, and ongoing

14   operating expenses.

15             16.     It is in the best interest of Debtor, its creditors, and its estate for Debtor

16   to use B of A's cash collateral because the use of cash collateral will allow the continued

17   operation of Debtor as a going concern, will maximize the likelihood of reorganization, and

18   will maximize the recovery to all creditors.

19             17.     To provide adequate protection for the use by Debtor of B of A's cash

20   collateral, Debtor proposes that B of A be granted a replacement security interest in and lien

21   upon Debtor's assets generated or acquired from and after the Petition Date of the same

22   category, kind, character, and description as were subject to B of A's lien on the Petition

23   Date.  The adequate protection lien granted to B of A shall not enhance or improve the

24   position of B of A.  Debtor believes the going concern value of the assets securing the

25   indebtedness owing to B of A exceeds the amount of the indebtedness owing to B of A.

26   * * *

**Page 4 of 5** -    DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

18.     Debtor will suffer immediate and irreparable harm if it is not permitted to use B of A's cash collateral.  Without use of B of A's cash collateral, Debtor will not be able to pay its expenses and other payments set forth in the budget, Debtor's operations will need to cease, and the value of Debtor's assets will be materially diminished.

19.     None of the provisions listed in LBF 541.7 are included in this motion or the proposed order.

20.     A copy of the proposed interim order authorizing use of cash collateral and granting adequate protection is attached hereto as Exhibit 2.

WHEREFORE, Debtor prays that this court enter an interim order (1) authorizing Debtor to use cash collateral, pending a final hearing on this motion; (2) granting to B of A adequate protection as herein proposed or is otherwise approved by the court; and (c) setting a final hearing on this motion.

DATED this 24th day of August, 2011.

TONKON TORP LLP

By /s/ Albert N. Kennedy
Albert N. Kennedy, OSB No. 821429
Michael W. Fletcher, OSB No. 010448
Attorneys for Debtor

**Page 5 of 5** -    DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

# EXHIBIT 1

**Western Communications**
**Cash Collateral Budget**
**(Includes activity of wholly owned subsidiary, The Union Democrat)**

| | week beg 22-Aug-11 | week beg 29-Aug-11 | week beg 5-Sep-11 | week beg 12-Sep-11 | week beg 19-Sep-11 | week beg 26-Sep-11 | week beg 3-Oct-11 | week beg 10-Oct-11 | week beg 17-Oct-11 | week beg 24-Oct-11 | week beg 31-Oct-11 | week beg 7-Nov-11 | week beg 14-Nov-11 | week beg 21-Nov-11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts:** | | | | | | | | | | | | | | |
| AR/Subscriptions Cash Collections Bulletin | 290,000 | 350,000 | 210,000 | 250,000 | 280,000 | 350,000 | 210,000 | 250,000 | 290,000 | 340,000 | 250,000 | 250,000 | 250,000 | 280,000 |
| AR/Subscriptions Cash Collections other papers | 180,000 | 160,000 | 150,000 | 170,000 | 180,000 | 180,000 | 150,000 | 170,000 | 190,000 | 150,000 | 160,000 | 170,000 | 180,000 | 150,000 |
| Circ auto renew CC | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Circ auto renew ACH | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| **Total** | **502,500** | **542,500** | **392,500** | **452,500** | **492,500** | **562,500** | **392,500** | **452,500** | **512,500** | **522,500** | **442,500** | **452,500** | **462,500** | **462,500** |
| **Disbursements:** | | | | | | | | | | | | | | |
| Gross payroll | | 530,000 | | 280,000 | 222,000 | 280,000 | 222,000 | 280,000 | 222,000 | | 500,000 | | 500,000 | |
| Employer taxes/workers comp | | 60,000 | | 35,000 | 28,000 | 35,000 | 28,000 | 35,000 | 28,000 | | 60,000 | | 60,000 | |
| Health Insurance - Premium and fees | | | 25,000 | | | 100,000 | 25,000 | | 100,000 | | 25,000 | 100,000 | | |
| Health Ins - Claims/Flex | | 75,000 | | 100,000 | | 50,000 | | | | | | | | |
| Prop/Casualty/Liab Ins | | | | | | | | | | | | | | |
| Carriers/haulers | 85,000 | | 165,000 | | 85,000 | | | 165,000 | | 85,000 | | 165,000 | | 85,000 |
| Correspondents/other contract labor | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| News bureaus AP | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| News bureaus other | | 5,000 | | 5,000 | | 5,000 | | 5,000 | | 5,000 | | 5,000 | | 5,000 |
| Page Co-op payments covering weekly production | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 |
| Page Co-op payments covering other (such as ink delivery) | | | 15,000 | | 60,000 | 15,000 | | | 15,000 | | | | | |
| Postage | | 22,000 | | | | 22,000 | | | | | 22,000 | | | |
| Annual software license fees | | | | | | | | | | | | | | |
| Other oper expenses | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Utilities/phone/internet | | 75,000 | | 60,000 | | | | 60,000 | | | | | 60,000 | |
| Deposits - Utilities | | | | | | | | | | | | | | |
| Capital (Primarily computer upgrades) | | | | 30,000 | | | | 30,000 | | | | | | |
| **Total Disbursements** | **180,000** | **862,000** | **300,000** | **605,000** | **490,000** | **602,000** | **370,000** | **670,000** | **460,000** | **185,000** | **702,000** | **365,000** | **715,000** | **185,000** |
| **Increase (Decrease) in Cash** | 322,500 | (319,500) | 92,500 | (152,500) | 2,500 | (39,500) | 22,500 | (217,500) | 52,500 | 337,500 | (259,500) | 87,500 | (252,500) | 277,500 |
| Cash Beginning Balance | 295,000 | 617,500 | 298,000 | 390,500 | 238,000 | 240,500 | 201,000 | 223,500 | 6,000 | 58,500 | 396,000 | 136,500 | 224,000 | (28,500) |
| Cash Ending Balance | 617,500 | 298,000 | 390,500 | 238,000 | 240,500 | 201,000 | 223,500 | 6,000 | 58,500 | 396,000 | 136,500 | 224,000 | (28,500) | 249,000 |

(Cash balance does not include approximately $240,000 held in the Fidelity Investments account)

# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| In re | Case No. 11-37319-elp11 |
|---|---|
| Western Communications, Inc., | **INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION** |
| Debtor. | |

   THIS MATTER having come before the Court upon Debtor's Motion for Authority to Use Cash Collateral ("Motion") and the Court being duly advised in the premises and finding good cause; now, therefore,

   IT IS HEREBY ORDERED as follows:

   1. On an interim basis pending a final hearing on the Motion, Debtor is authorized to use cash collateral in which B of A, N.A. ("B of A") claims a security interest (the "Cash Collateral") in accordance with the terms of this Order to pay costs and expenses incurred by Debtor in the ordinary course of its business, consistent with the budget attached to this Order as Exhibit 1 (the "Budget").

   2. Debtor's authority to use Cash Collateral is limited to the amounts set forth in the Budget; provided, however, that Debtor may make expenditures in excess of said

**Page 1 of 5** - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

sums in the Budget so long as any variance shall not exceed 10% of the cumulative expenses as set forth in the Budget, tested on a monthly basis.  Debtor may exceed such variances only with the prior written consent of B of A or by subsequently entered order of this Court.  On or before 10 days after the end of each month, Debtor shall deliver to B of A a report comparing, on a line item and aggregate basis, Debtors' actual performance to the Budget.

       3.      Debtor's authority to use Cash Collateral, without further order of the Court issued after notice and hearing or the written consent of B of A, shall automatically expire upon the earlier of (a) _____, 2011, or (b) regardless of whether Debtor has expended the entire amount set forth in the Budget, the failure by Debtor to comply with any provision of this Order (such failure being an "Event of Default"), which failure is not remedied within five business days after delivery of notice of such failure by B of A to Debtor (the earlier of such date, the "Termination Date").  Upon the Termination Date, Debtor's authority to use or spend any further Cash Collateral shall automatically terminate unless and until Debtor obtains the written consent of B of A or a further order of this Court, issued after notice and an opportunity for a hearing, provided, however, that notwithstanding the occurrence of the Termination Date, Debtor shall be authorized to use Cash Collateral to pay those budgeted amounts that have been incurred prior to the Termination Date.

       4.      As adequate protection for any Cash Collateral used by Debtor, B of A is hereby granted, pursuant to Sections 361(1) and 363(e) of the Bankruptcy Code, a perfected lien (the "Replacement Lien") to secure an amount of B of A's prepetition claims equal to the extent of any diminution in value of the Prepetition Collateral (the "Diminution") by reason of the use of Cash Collateral authorized herein, whether as a result of physical deterioration, consumption, shrinkage or otherwise.  The Replacement Lien shall attach to all property and assets of Debtor and its estate, of any kind or nature whatsoever, whether now owned or hereinafter acquired by Debtor, and all products, proceeds, rents, issues or profits thereof that were either subject to the Prepetition Liens or acquired as a result of Debtor's use and/or expenditure of Cash Collateral;

**Page 2 of 5** -   INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
                      GRANTING ADEQUATE PROTECTION

provided, however, that the Replacement Lien shall not attach to property recovered through the exercise of the powers granted under Sections 506(c), 544, 545, 547, 548 and 549 of the Bankruptcy Code.  Granting this security interest to B of A is for the purpose of providing adequate protection to B of A to protect its allowed secured claim on the Petition Date and is not intended, nor shall it be deemed, to improve the collateral position of B of A as of the Petition Date.

       5.     The Replacement Lien shall be in addition to all other security interests and liens securing B of A's allowed secured claim in existence on the Petition Date. Additionally, nothing in this Order shall abridge or limit B of A's security interest in proceeds, products, or profits to the extent provided under Section 552 of the Bankruptcy Code

       6.     The Replacement Lien hereunder shall at all times be senior to the rights of Debtor and any successor trustee or estate representative in this case or any subsequent cases or proceedings under the Bankruptcy Code.

       7.     The Replacement Lien granted to B of A by this Order shall be perfected and enforceable by operation of law upon execution and entry of this Order by the Court without regard to whether such Replacement Lien is perfected under applicable non-bankruptcy law.

       8.     To the extent the Replacement Lien proves to be inadequate as adequate protection for the Diminution, as further partial adequate protection B of A shall and hereby does hold allowed administrative claims under Section 503(b) of the Bankruptcy Code, which claims shall have priority over, and be senior to, all other administrative claims against Debtor pursuant to Section 507(b) of the Bankruptcy Code.

       9.     Debtor shall at all times keep the Prepetition Collateral and the properties to which the Replacement Lien attaches free and clear of all other liens, encumbrances and security interests, other than those in existence on the Petition Date, and shall pay and discharge when due all taxes, levies and other charges arising or accruing from and after the Petition Date.

**Page 3 of 5** -   INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

10.     In the event of the occurrence of an Event of Default, and at all times thereafter, B of A may seek relief from the Court on five business days' written notice to Debtor to, among other things, terminate Debtor's authority to use all or any portion of the Cash Collateral.

14.     The provisions of this Order and the effect of any actions taken hereunder shall survive issuance and entry of any order converting this case to one under Chapter 7 of the Bankruptcy Code or dismissing this Chapter 11 case.  The priorities, liens and security interests granted herein shall continue in this or any superseding case under the Bankruptcy Code, and any such liens and security interests shall maintain their priority as provided herein until satisfied and discharged subject to the Bankruptcy Code.

15.     This Order, and each of its terms, shall be effective immediately upon entry by the Court and the automatic stay of judgment provisions of Bankruptcy Rule 8017(a) shall not apply.

IT IS FURTHER ORDERED that a further hearing on Debtor's Motion for Authority to Use Cash Collateral shall be held by the Court in Courtroom _____ of the United States Bankruptcy Court for the District of Oregon, 1001 SW Fifth Avenue, Portland, Oregon 97204, on _____, 2011, at _____ _.m.  Within three (3) business days after the entry hereof, Debtor shall mail or otherwise serve a copy of this Order, together with a notice of the further hearing pursuant to LBR 4001-1.D and LBF 541.50.

# # #

**Page 4 of 5** -   INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
                    GRANTING ADEQUATE PROTECTION

Presented by:

TONKON TORP LLP

By _____
    Albert N. Kennedy, OSB No. 821429
    Michael W. Fletcher, OSB No. 010448
    888 S.W. Fifth Avenue, Suite 1600
    Portland, OR  97204-2099
    Telephone:    503-221-1440
    Facsimile:    503-274-8779
    E-Mail:    al.kennedy@tonkon.com
        michael.fletcher@tonkon.com
    Attorneys for Debtor

cc:    List of Interested Parties

**Page 5 of 5** -  INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
    GRANTING ADEQUATE PROTECTION

## LIST OF INTERESTED PARTIES

### *In re Western Communications, Inc.*
### U.S. Bankruptcy Court Case No. 11-37319-elp11

### ECF PARTICIPANTS:

- US Trustee, Portland USTPRegion18.PL.ECF@usdoj.gov

### NON-ECF PARTICIPANTS:

**SECURED CREDITOR**

Bank of America
c/o Thomas Brown, Senior VP
WA1-501-13-24
800 5th Ave., 13th Fl.
Seattle, WA 98104

**TOP 20 UNSECURED CREDITORS**

Page Cooperative, Inc.
c/o John Snyder
700 American Ave., #101
King of Prussia, PA 19406

City of Bend – Finance
c/o Sonia Andrews
POB 431
Bend, OR 97709

Bendtel, Inc.
POB 356
Bend, OR 97709

PDI Plastics, Inc.
5037 Pine Creek Dr.
Westerville, OH 43081

Schermerhorn Bros. Co.
POB 668
Lombard, IL 60148-0668

Cascade Natural Gas Corp.
POB 7608
Boise, ID 83707-9928

Traneoregon, Inc.
POB 23579
Portland, OR 97281

Publishing Group of America, Inc.
341 Cool Springs Blvd., #400
Franklin, TN 37067

Band-It Rubber Co.
1711 Delilah St.
Corona, CA 92879-1865

Global Electronic Services, Inc.
5325 Palmero Ct.
Buford, GA 30518

Lubcon Turmo Lubrication, Inc.
5460 33rd St., SE
Grand Rapids, MI 49512

ITD Print Solutions
POB 6205
Carson, CA 90749

Stanley Convergent Security
55 Shuman Blvd., #900
Naperville, IL 60563

Airfilco, Inc.
415 N Tillamook St.
Portland, OR 97227-1823

Databar, Inc.
2908 Meridian E #201
Edgewood, WA 98371-2111

All Press Parts & Equipment, Inc.
612 Shorehaven Lane
Oshkosh, WI 54904

Digital Technology International
1180 N Mountain Springs Pkwy
Springville, UT 84663