**Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
    Direct Dial:  (503) 802-2013
    Facsimile:    (503) 972-3713
    E-Mail:      al.kennedy@tonkon.com
**Michael W. Fletcher**, OSB No. 010448
    Direct Dial:  (503) 802-2169
    Facsimile:    (503) 972-3869
    E-Mail:michael.fletcher@tonkon.com
**TONKON TORP** LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR  97204

     Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 11-37319-elp11 |
| Western Communications, Inc., | **DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)** |
| Debtor. | |

DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

# TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS ................................................................................................1

ARTICLE 2 UNCLASSIFIED CLAIMS ...........................................................................6

ARTICLE 3 CLASSIFIED CLAIMS ................................................................................7

ARTICLE 4 TREATMENT OF UNIMPAIRED CLASSES ...................................................8

ARTICLE 5 TREATMENT OF IMPAIRED CLASSES .......................................................9

ARTICLE 6 DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; SETOFFS .....................11

ARTICLE 7 MEANS FOR IMPLEMENTATION OF THE PLAN ......................................12

ARTICLE 8 EXECUTORY CONTRACTS ........................................................................13

ARTICLE 9 EFFECT OF CONFIRMATION ....................................................................14

ARTICLE 10 RETENTION OF JURISDICTION ................................................................15

ARTICLE 11 ADMINISTRATIVE PROVISIONS ..............................................................16

ARTICLE 12 MISCELLANEOUS PROVISIONS ...............................................................18

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Western Communications, Inc. ("Debtor") proposes the following Plan of Reorganization (the "Plan") pursuant to Chapter 11 of the Bankruptcy Code. The Plan provides for the payment in full of all Allowed Claims.

A Disclosure Statement is enclosed with this Plan to assist you in understanding the Plan and making an informed decision whether to vote for or against the Plan.

**ARTICLE 1**

**DEFINITIONS**

Definitions of certain terms used in the Plan are set forth below. Other terms are defined in the text of the Plan or in the text of the Disclosure Statement. In either case, when a defined term is used, the first letter of each word in the defined term is capitalized. Terms used and not defined in the Plan or Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires. The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. Captions and headings to articles, sections, and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1.    "Administrative Expense Claim" means any Claim entitled to the priority afforded by Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

1.2.    "Allowed" means, with respect to any Claim, (a) if no proof of claim has been filed, the amount (if any) listed by Debtor in the Schedules as not being disputed, contingent, or unliquidated, or (b) if a proof of claim has been filed (i) the

**Page 1 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

amount of the Claim as set forth on the proof of claim if no objection to such Claim, or motion to estimate such Claim, has been Filed within any period of limitation fixed by the Code or the rules or orders of the Court, or (ii) if an objection has been interposed, (x) the amount determined by a Final Order with respect to such Claim or (y) the amount set forth in this Plan as the allowed amount of such Claim, or (c) if a Final Order allowing such Claim has been entered, the amount set forth in such Final Order.

1.3.    "Avoidance Action" means any avoidance or recovery action of Debtor that may be brought on behalf of Debtor or its estate under Sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or under any similar or related state or federal statutes and common law, including, without limitation, state fraudulent transfer or conveyance laws, whether or not such actions are pending on the Effective Date or are thereafter asserted or commenced.

1.4.    "Bankruptcy Code" or "Code" means the Bankruptcy Reform Act of 1978, as amended from time to time, set forth in Sections 101 *et seq.* of Title 11 of the United States Code.

1.5.    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Oregon or such other court that exercises jurisdiction over the Chapter 11 Case or any proceeding therein, including the United States District Court for the District of Oregon, to the extent the reference to the Chapter 11 Case or any proceeding therein is withdrawn.

1.6.    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under Section 2075, Title 28, of the United States Code, and the local rules and standing orders of the Bankruptcy Court.

1.7.    "B of A" means Bank of America, N.A.

1.8.    "B of A Loan Agreement" means, collectively, that certain Loan Agreement dated March 18, 2005 (generally referred to as the "Term Loan Agreement")

**Page 2 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

and that certain Loan Agreement dated March 18, 2005 (generally referred to as the "Revolving Line of Credit Agreement") and all loan documents entered into in connection therewith.

1.9.    "B of A Loan Documents" means collectively the B of A Loan Agreement and the B of A Swap Agreement, as amended.

1.10.    "B of A Swap Agreement" means, collectively, the ISDA 2002 Master Agreement and Schedule to the Master Agreement, each dated March 18, 2005 (collectively, the "Master Agreement"), and those Interest Rate Swap Transactions (Reference Nos. 4213458 and 4213457) (collectively the "Transactions") entered into between B of A and Debtor, evidenced by SWAP Confirmations dated March 21, 2005 and March 22, 2005, that are subject to and form a part of the Master Agreement.

1.11.    "B of A Swap Termination Fee" means any fee payable by Debtor to B of A pursuant to the B of A Swap Agreement arising from the Transactions, which fee B of A has asserted is in the amount of $1,880,807.

1.12.    "Cash" means lawful currency of the United States of America.

1.13.    "Chapter 11 Case" or "Case" means the case under Chapter 11 of the Bankruptcy Code with respect to Debtor, pending in the District of Oregon, administered as *In re Western Communications, Inc.*, Case No. 11-37319-elp11.

1.14.    "Claim" means (a) any right to payment from Debtor arising before the Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Page 3 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1      1.15.   "Claims Bar Date" means December 29, 2011.

2      1.16.   "Class" means and refers to a class of Claims described in Article 3

3  hereof.

4      1.17.   "Collateral" means any property in which Debtor has an interest

5  that is subject to a lien or security interest securing the payment of an Allowed Secured

6  Claim.

7      1.18.   "Confirmation Date" means the date on which the Confirmation

8  Order is entered on the docket by the Clerk of the Bankruptcy Court.

9      1.19.   "Confirmation Order" means the order of the Bankruptcy Court

10  confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy

11  Code.

12      1.20.   "Debtor" means Western Communications, Inc., as Debtor and

13  Debtor-in-Possession.

14      1.21.   "Disallowed Claim" means any Claim, or portion thereof, that has

15  been disallowed pursuant to a Final Order.

16      1.22.   "Disclosure Statement" means Debtor's Disclosure Statement as

17  amended, modified, restated, or supplemented from time to time pertaining to the Plan.

18      1.23.   "Disputed Claim" means any Claim that is not an Allowed Claim

19  or a Disallowed Claim.

20      1.24.   "Effective Date" means the later of July 1, 2012 or the first day of

21  the first month following the date that the Confirmation Order becomes a Final Order.

22      1.25.   "Federal Judgment Rate" means, with respect to an Allowed

23  Claim, the interest rate as of the Petition Date established by 28 U.S.C. § 1961 as the

24  interest rate on federal court judgments.

25      1.26.   "Filed" means filed with the Bankruptcy Court in the Chapter 11

26  Case.

**Page 4 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1          1.27.    "Final Order" means an order or judgment entered on the docket

2    by the Clerk of the Bankruptcy Court, or any other court exercising jurisdiction over the

3    subject matter and the parties, that has not been reversed, stayed, modified, or amended

4    and as to which the time for filing a notice of appeal, or petition for *certiorari* or request

5    for *certiorari*, or request for rehearing, shall have expired.

6          1.28.    "General Unsecured Claim" means any Claim that is not an

7    Administrative Expense Claim, a Secured Claim, a Priority Tax Claim, or an Other

8    Priority Claim.

9          1.29.    "Insider" shall have the meaning ascribed to it by Section 101(31)

10   of the Bankruptcy Code.

11         1.30.    "Interests" means the rights of the owners of the issued and

12   outstanding shares of common stock of Debtor.

13         1.31.    "Other Priority Claim" means any Claim for an amount entitled to

14   priority in right of payment pursuant to Section 507(a) of the Code, other than a Priority

15   Tax Claim or an Administrative Expense Claim.

16         1.32.    "PAGE" means Page Cooperative, Inc.

17         1.33.    "Petition Date" means August 23, 2011.

18         1.34.    "Plan" means this Plan of Reorganization (including all exhibits

19   and schedules), as amended, modified, restated, or supplemented from time to time.

20         1.35.    "Priority Tax Claim" means a Claim of a government unit of the

21   kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

22         1.36.    "Rejection Claim" means a Claim arising from the rejection of an

23   unexpired executory contract pursuant to this Plan or a Final Order.

24         1.37.    "Reorganized Debtor" means Debtor from and after the Effective

25   Date.  Unless the context clearly requires otherwise, any reference to "Debtor" herein for

26   * * *

**Page 5 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1   a period from and after the Effective Date shall be deemed to refer to Reorganized

2   Debtor.

3          1.38.   "Restated Articles of Incorporation" means the restated Articles of

4   Incorporation of Debtor, which shall modify and amend Debtor's Articles of

5   Incorporation to prohibit the issuance of non-voting equity securities to the extent

6   required by Section 1123(a)(6) of the Bankruptcy Code.

7          1.39.   "Scheduled Amounts" means the amount of Claims stated in the

8   Schedules.

9          1.40.   "Schedules" means the Schedules of Assets and Liabilities Filed by

10  Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated,

11  or supplemented from time to time.

12         1.41.   "Secured Claim" means any Claim to the extent such Claim

13  constitutes a secured claim under the Bankruptcy Code.

14         1.42.   "Small Unsecured Claim" means any Claim that would qualify as a

15  General Unsecured Claim and is equal to or less than $1,000 or that has been reduced by

16  election in writing to $1,000, provided that such written election shall be served on

17  Debtor not later than the first date fixed by the Court for the filing of acceptances or

18  rejections of the Plan.

19                         **ARTICLE 2**

20                      **UNCLASSIFIED CLAIMS**

21         2.1.    <u>Administrative Expense Claims</u>.  Each holder of an Allowed

22  Administrative Expense Claim shall receive payment of such Claim in full in Cash on the

23  later of (a) the Effective Date or (b) the date on which such Claim becomes Allowed,

24  unless such holder shall agree to a different treatment of such Claim (including, without

25  limitation, any different treatment that may be provided for in any documentation, statute,

26  or regulation governing such Claim); provided, however, that Administrative Expense

*Page 6 of 22* - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1 Claims representing obligations incurred in the ordinary course of business by Debtor

2 during the Chapter 11 Case shall be paid by Debtor or Reorganized Debtor in the

3 ordinary course of business and in accordance with any terms and conditions of the

4 particular transaction, and any agreements relating thereto.  Any agreement between

5 Debtor and a holder of an Allowed Administrative Expense Claim for treatment other

6 than payment in full on the date described above shall be in writing.

7         2.2.    <u>Priority Tax Claims</u>.  Each holder of an Allowed Priority Tax

8 Claim shall receive payment of such Claim in full in Cash in a manner and within the

9 timeframes specified by Section 1129(a)(9)(C) and (D) of the Bankruptcy Code.

10         2.3.    <u>United States Trustee Fees</u>.  Fees payable by Debtor to the United

11 States Trustee under 28 U.S.C. § 1930(a)(6), or to the Clerk of the Bankruptcy Court, will

12 be paid in full on the Effective Date.  Reorganized Debtor shall continue to pay such fees

13 to the Bankruptcy Court until this Case is closed by the Bankruptcy Court, dismissed, or

14 converted.  This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that

15 Congress makes retroactively applicable to confirmed Chapter 11 cases.

16                              **ARTICLE 3**

17                            **CLASSIFIED CLAIMS**

18         All Claims (other than unclassified Claims addressed in Article 2 above) are

19 divided into the following Classes for all purposes of this Plan, including voting,

20 confirmation and distribution pursuant to this Plan.

21         3.1.    <u>Class 1 – Other Priority Claims</u>.  Class 1 consists of all Allowed

22 Other Priority Claims.

23         3.2.    <u>Class 2 – City of Bend</u>.  Class 2 consists of the Allowed Secured

24 Claim of the City of Bend.

25         3.3.    <u>Class 3 – B of A</u>.  Class 3 consists of the Allowed Secured Claim

26 of B of A.

**Page 7 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

3.4.  <u>Class 4 – PAGE</u>.  Class 4 consists of the Allowed Claim of PAGE (exclusive of any Section 503(b)(9) Administrative Expense Claim of PAGE).

3.5.  <u>Class 5 – Small Unsecured Claims</u>.  Class 5 consists of Allowed Small Unsecured Claims.

3.6.  <u>Class 6 – General Unsecured Claims</u>.  Class 6 consists of all Allowed General Unsecured Claims.

3.7.  <u>Class 7 – Interests</u>.  Class 7 consists of all Interests.

## ARTICLE 4

## TREATMENT OF UNIMPAIRED CLASSES

Each of Class 1 (Other Priority Claims) and Class 2 (City of Bend) is unimpaired under this Plan.  Accordingly, pursuant to 11 U.S.C. § 1126(f), each of Class 1 and Class 2, and each holder of a Claim in Class 1 or Class 2, is conclusively presumed to have accepted this Plan, will not be solicited to accept this Plan, and is not entitled to vote to accept or reject this Plan.

4.1.  <u>Class 1 - Other Priority Claims</u>.  Each holder of an Allowed Class 1 Claim shall be paid the full amount of such Claim in Cash on the later of (a) the Effective Date, or (b) the date on which such Claim becomes Allowed.

4.2.  <u>Class 2 – City of Bend, Oregon</u>.  The City of Bend shall have an Allowed Class 2 Claim in an amount equal to the amount owing by Debtor to the City of Bend as of the Petition Date (approximately $11,800) with respect to a $90,000 loan made by the City of Bend to Debtor in 2003 in connection with the Southern Bridge Local Improvement District (LID) No. 671 assessment imposed by the City of Bend on Debtor in 2003 ("City of Bend Loan").  Debtor reaffirms its obligations under the City of Bend Loan in accordance with its original terms.  To the extent any payments are due and owing under the City of Bend Loan as of the Effective Date, Reorganized Debtor will make such payments, with interest at the contract rate (6.5%), on the Effective Date.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    Thereafter, Reorganized Debtor will continue to make all regularly scheduled loan

2    payments to the City of Bend as and when such payments become due under the City of

3    Bend Loan. The City of Bend will retain its security interests in and liens upon its

4    Collateral with the same priority and to the same extent such security had as of the

5    Petition Date.

6          Class 2 is not impaired by this Plan. This Plan does not alter, and shall not be

7    deemed in any way to alter, the legal, equitable or contractual rights of the City of Bend with

8    respect to the City of Bend Loan or its Class 2 Claim.

9                      **ARTICLE 5**

10            **TREATMENT OF IMPAIRED CLASSES**

11          Each holder of a Claim in Class 3 (B of A), Class 4 (PAGE), Class 5 (Small

12    Unsecured Claims), Class 6 (General Unsecured Claims) and Class 7 (Interests) is impaired

13    under this Plan and holders of Claims in such Classes are entitled to vote to accept or reject

14    this Plan.

15          5.1.    <u>Class 3 – B of A</u>. B of A will have an Allowed Class 3 Claim in

16    the amount of all principal, accrued non-default interest, and reasonable fees (including

17    the B of A SWAP Termination Fee) and costs owing by Debtor to B of A as of the

18    Effective Date under the B of A Loan Documents (as such amount (including the B of A

19    SWAP Termination Fee) is determined by agreement of Debtor and B of A, or, absent

20    agreement, in such amount as is determined and Allowed by the Bankruptcy Court).

21          As Collateral for its Class 3 Claim, B of A will retain its security interests and

22    liens upon its Collateral with the same priority and to the same extent such security had as of

23    the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and

24    insure the Collateral to its full usable value.

25          The Class 3 Claim will be satisfied by the delivery of a promissory note to

26    B of A ("B of A Note") in the original principal amount of the Allowed Class 3 Claim, in the

**Page 9 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

form attached hereto as Exhibit 1. The B of A Note will bear interest from the Effective Date at a fixed per annum rate of 4.5% and will be payable by Reorganized Debtor as follows:

Commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter through and including the 24th month following the Effective Date, Reorganized Debtor will make interest-only payments on the B of A Note. Commencing on the first day of the 25th month following the Effective Date and continuing on the first day of each month thereafter until the B of A Note has been paid in full, Reorganized Debtor will make equal monthly amortizing payments of principal and interest on the B of A Note based on a 30-year amortization schedule, with a balloon payment due 10 years after the Effective Date.

B of A will have no Claim other than its Class 3 Claim.

5.2.    Class 4 – PAGE. PAGE will have an Allowed Class 4 Claim in the amount of (x) $610,289.68 (which amount is equal to the total pre-petition amount owing to PAGE), less (y) the amount of any Allowed Section 503(b)(9) Administrative Expense Claim of PAGE, as such amount is determined by agreement of Debtor and PAGE or, absent agreement, as such amount is determined and Allowed by the Bankruptcy Court.

As Collateral for its Class 4 Claim, PAGE will retain its security interests in and liens upon its Collateral with the same priority and to the same extent such security had as of the Petition Date, and Reorganized Debtor will maintain the Collateral in good repair and insure the Collateral to its full usable value.

The Class 4 Claim will be satisfied by the delivery of a promissory note to PAGE ("PAGE Note") in the original principal amount of the Allowed Class 4 Claim, in the form attached hereto as Exhibit 2. The PAGE Note will bear interest from the Petition Date at a fixed per annum rate of 4.5% and will be payable by Reorganized Debtor in 20 equal quarterly payments of principal and interest (with payments due each March 31, June 30,

**Page 10 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1  September 30 and December 31), with the first quarterly payment due on the first day of the

2  first calendar quarter following the Effective Date.

3         5.3.    <u>Class 5 – Small Unsecured Claims</u>.  Each holder of an Allowed

4  Class 5 Claim will be paid in Cash the full amount of its Class 5 Claim, without interest,

5  no later than 120 days after the Effective Date.

6         5.4.    <u>Class 6 – General Unsecured Claims</u>.  Each holder of an Allowed

7  Class 6 Claim will be paid in Cash the full amount of its Class 6 Claim, with interest

8  accruing from the Petition Date at the Federal Judgment Rate, no later than two years

9  after the Effective Date.  In addition, within 12 months after the Effective Date,

10  Reorganized Debtor shall have paid at least 50% of the principal amount of each General

11  Unsecured Claim.  At the time Reorganized Debtor makes any principal payment on a

12  General Unsecured Claim, Reorganized Debtor shall also pay all accrued but unpaid

13  interest then owing under this Plan on such General Unsecured Claim.

14         5.5.    <u>Class 7 – Interests</u>.  Existing Interests in Debtor will be preserved.

15  However, until all Class 4, Class 5 and Class 6 Claims have been paid in full,

16  Reorganized Debtor will not repurchase any stock or make or pay any distributions or

17  dividends to its shareholders on account of their stock, except for tax distributions

18  necessary to meet income tax obligations arising from income attributable to Debtor or

19  Reorganized Debtor.

20  **ARTICLE 6**

21  **DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; SETOFFS**

22         6.1.    <u>Disputed Claims; Objections to Claims</u>.  No payments or

23  distributions shall be made with respect to any Claim to the extent it is a Disputed Claim

24  unless and until the Disputed Claim becomes an Allowed Claim.  Debtor reserves the

25  right to contest and object to any Claims and previously Scheduled Amounts, including,

26  without limitation, those Claims and Scheduled Amounts that are specifically referenced

**Page 11 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

herein, are not listed in the Schedules, are listed therein as disputed, contingent, or
unliquidated in amount, or are listed therein at a different amount than Debtor currently
believes is validly due and owing.  Unless otherwise ordered by the Bankruptcy Court, all
objections to Claims and Scheduled Amounts (other than Administrative Expense
Claims) shall be Filed and served upon counsel for Debtor and the holder of the Claim
objected to on or before the later of (a) 30 days after the Effective Date or (b) 60 days
after the date (if any) on which a proof of claim is Filed in respect of a Rejection Claim.
The last day for filing objections to Administrative Expense Claims shall be set pursuant
to order of the Bankruptcy Court.  All Disputed Claims shall be resolved by the
Bankruptcy Court, except to the extent that (a) Debtor may otherwise elect consistent
with the Plan and the Bankruptcy Code, or (b) the Bankruptcy Court may otherwise
order.

       6.2.   <u>Setoffs</u>.  Debtor or Reorganized Debtor may, but shall not be
required to, set off against any Claim and the distributions to be made pursuant to the
Plan in respect of such Claim, any claims of any nature whatsoever that Debtor or
Reorganized Debtor may have against the holder of such Claim, but neither the failure to
do so nor the allowance of any Claim hereunder shall constitute a waiver or release of
any such claim Debtor or Reorganized Debtor may have against such holder.

# ARTICLE 7

# MEANS FOR IMPLEMENTATION OF THE PLAN

       7.1.   <u>Continuation of Debtor</u>.  Reorganized Debtor will fund payments
to its Creditors and otherwise satisfy its Plan obligations from available Cash and from
the net operating income generated from Reorganized Debtor's continuing business
operations.  If such Cash and net operating income are not at any time sufficient to fund
payments to its Creditors or otherwise satisfy its Plan obligations, Reorganized Debtor
* * *

**Page 12 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1 will generate funds to satisfy such obligations from a recapitalization of Reorganized

2 Debtor or from a sale or refinance of some or all of Reorganized Debtor's business.

3        7.2.    <u>Corporate Action</u>.  Upon entry of the Confirmation Order by the

4 Clerk of the Bankruptcy Court, all actions contemplated by the Plan shall be authorized

5 and approved in all respects (subject to the provisions of the Plan), including, without

6 limitation, the following:  (a) the adoption of Restated Articles and the filing of the

7 Restated Articles with the Oregon Secretary of State; and (b) the execution, delivery and

8 performance of all documents and agreements relating to the Plan and any of the

9 foregoing.  On and following the Effective Date, the appropriate officers of Reorganized

10 Debtor are authorized and directed to execute and deliver any and all agreements,

11 documents, and instruments contemplated by the Plan and/or the Disclosure Statement in

12 the name of and on behalf of Reorganized Debtor.

13                        **ARTICLE 8**

14                    **EXECUTORY CONTRACTS**

15        8.1.    <u>Generally</u>.  Except as otherwise specifically provided in this Plan,

16 all of Debtor's executory contracts will be deemed assumed by operation of law on the

17 Effective Date, except any executory contract that has been specifically assumed or

18 rejected by Debtor on or before the Effective Date or in respect of which a motion for

19 assumption or rejection has been Filed by Debtor on or before the Effective Date.  The

20 Confirmation Order shall constitute an order authorizing assumption of all such

21 executory contracts and unexpired leases.  Reorganized Debtor shall promptly pay all

22 amounts required under Section 365 of the Bankruptcy Code to cure any monetary

23 defaults for executory contracts and unexpired leases being assumed and shall perform its

24 obligations under such assumed executory contracts and unexpired leases from and after

25 the Effective Date in the ordinary course of business.  To the extent necessary, all

26 assumed executory contracts and unexpired leases shall be deemed assigned to

*Page 13 of 22* - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1 Reorganized Debtor as of the Effective Date. The Confirmation Order shall constitute an

2 order authorizing such assignment of assumed executory contracts and unexpired leases,

3 and no further assignment documentation shall be necessary to effectuate such

4 assignment.

5         8.2.    Rejection Claims. A Rejection Claim must be filed no later than

6 the later of the Claims Bar Date or 30 days after the rejection of the executory contract.

7 Any Rejection Claim not Filed within such timeframe shall be forever barred. Each

8 Allowed Rejection Claim shall constitute a General Unsecured Claim.

9         8.3.    Compensation and Benefit Programs. Except to the extent

10 specifically provided otherwise in this Plan or the Confirmation Order, all employee

11 compensation and benefit plans, policies and programs of Debtor applicable to its

12 employees as in effect on the Effective Date, including, without limitation, all savings

13 plans; retirement plans; health care plans (including Debtor's self-funded medical benefit

14 plan); disability plans; severance benefit plans; incentive plans; stock incentive plans; and

15 life, accidental death, and dismemberment insurance plans, shall continue in full force

16 and effect, without prejudice to Reorganized Debtor's rights under applicable

17 non-bankruptcy law to modify, amend or terminate any of the foregoing arrangements.

18 **ARTICLE 9**

19 **EFFECT OF CONFIRMATION**

20         9.1.    Effect of Confirmation. The effect of confirmation shall be as set

21 forth in Section 1141 of the Bankruptcy Code.

22         9.2.    Debtor's Injunction. Except to the extent specifically provided

23 otherwise in this Plan or in the Confirmation Order, confirmation of the Plan shall act as

24 a permanent injunction applicable to entities against (a) the commencement or

25 continuation, including the issuance or employment of process, of a judicial,

26 administrative, or other action or proceeding against Reorganized Debtor that was or

*Page 14 of 22* - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

could have been commenced before the entry of the Confirmation Order; (b) the enforcement against Reorganized Debtor or its assets of a judgment obtained before the Petition Date; and (c) any act to obtain possession of or to exercise control over, or to create, perfect or enforce a lien upon, all or any part of the assets.

9.3.　　Discharge.  Except to the extent specifically provided otherwise in this Plan or in the Confirmation Order, the confirmation of the Plan shall, provided that the Effective Date shall have occurred, discharge all Claims to the fullest extent authorized or provided for by the Bankruptcy Code, including, without limitation, to the extent authorized or provided for by Sections 524 and 1141 thereof.

9.4.　　Revesting; Operation of Business.  Except as otherwise expressly provided in this Plan, on the Effective Date all property and assets of the estate of Debtor shall revest in Reorganized Debtor, free and clear of all claims, liens, encumbrances, charges, and other interests of Creditors arising on or before the Effective Date; and Reorganized Debtor may operate, from and after the Effective Date, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

## ARTICLE 10

## RETENTION OF JURISDICTION

10.1.　　Jurisdiction of the Bankruptcy Court.  Notwithstanding the entry of the Confirmation Order, the Court shall retain jurisdiction of this Chapter 11 Case pursuant to and for the purposes set forth in Sections 1127(b) and 1141 through 1146 of the Code to enforce the provisions of this Plan and to ensure that the intent and purposes of this Plan are carried out and given effect.  Without limiting the preceding, the Court shall retain jurisdiction to:

(a)　　Classify the Claim or interest of any Creditor, reexamine Claims or Interests that have been allowed for voting purposes, and determine any objections that may be Filed to Claims or Interests;

**Page 15 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1        (b)      Determine requests for payment of Claims entitled to priority

2    under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of

3    expenses in favor of professionals employed at the expense of the Estate;

4        (c)      Avoid transfers or obligations to subordinate Claims under

5    Chapter 5 of the Bankruptcy Code;

6        (d)      Approve the assumption, assignment, or rejection of an

7    executory contract or unexpired lease pursuant to this Plan;

8        (e)      Resolve controversies and disputes regarding the interpretation

9    or enforcement of this Plan;

10        (f)      Implement the provisions of this Plan and enter orders in aid of

11    confirmation;

12        (g)      To the extent the Court has jurisdiction, adjudicate adversary

13    proceedings and contested matters pending or hereafter commenced in this Chapter 11 Case;

14    and

15        (h)      Enter a final decree closing this Chapter 11 Case.

16    10.2.   <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the

17    Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction over any

18    matter arising under, arising in, or related to the Chapter 11 Case, this Article shall not

19    prohibit or limit the exercise of jurisdiction by any other court having competent

20    jurisdiction with respect to such subject matter.

21              **ARTICLE 11**

22          **ADMINISTRATIVE PROVISIONS**

23    11.1.   <u>Modification or Withdrawal of the Plan</u>.  Debtor may alter, amend,

24    or modify the Plan pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy

25    Rule 3019 at any time prior to the time the Bankruptcy Court has signed the

26    Confirmation Order.  After such time, and prior to the substantial consummation of the

**Page 16 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1 Plan, Debtor may, so long as the treatment of holders of Claims and Interests under the

2 Plan is not adversely affected, institute proceedings in Bankruptcy Court to remedy any

3 defect or omission or to reconcile any inconsistencies in the Plan, Disclosure Statement,

4 or Confirmation Order, and any other matters as may be necessary to carry out the

5 purposes and effects of the Plan; provided, however, that prior notice of such proceedings

6 shall be served in accordance with Bankruptcy Rule 2002.

7     11.2. <u>Revocation or Withdrawal of Plan</u>

8        11.2.1. <u>Right to Revoke</u>.  Debtor reserves the right to revoke or

9 withdraw the Plan at any time prior to the Effective Date.

10        11.2.2. <u>Effect of Withdrawal or Revocation</u>.  If Debtor revokes or

11 withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void.

12 In such event, nothing contained herein shall be deemed to constitute a waiver or release of

13 any claims by or against Debtor or any other Entity or to prejudice in any manner the rights

14 of Debtor or any Entity in any further proceeding involving Debtor.

15        11.2.3. <u>Nonconsensual Confirmation</u>.  Debtor shall request that the

16 Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if

17 the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except

18 subsection 1129(a)(8), are met.

19     11.3. <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019,

20 and in consideration for the classification, distributions, and other benefits provided

21 under the Plan, the provisions of the Plan shall constitute a good faith compromise and

22 settlement of all Claims or controversies resolved pursuant to the Plan.  The entry of the

23 Confirmation Order shall constitute the Court's approval of each of the compromises and

24 settlements provided for in the Plan, and the Court's findings shall constitute its

25 determination that such compromises and settlements are in the best interests of Debtor.

26 * * *

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

12.1.   <u>Restated Articles</u>.  On or promptly following the Effective Date, Reorganized Debtor shall cause the Restated Articles to be filed with the Oregon Secretary of State.

12.2.   <u>Utility Deposits</u>.  All utilities holding a utility deposit obtained as a result of this Bankruptcy Case shall immediately after the Effective Date return or refund such utility deposit to Reorganized Debtor.  At the sole option of Reorganized Debtor, Reorganized Debtor may apply any such utility deposit that has not been refunded to Reorganized Debtor in satisfaction of any payments due or to become due from Reorganized Debtor to a utility holding such a utility deposit.

12.3.   <u>Retiree Benefits</u>.  On or after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, Reorganized Debtor shall continue to pay all retiree benefits (if any) as that term is defined in Section 1114 of the Bankruptcy Code, maintained or established by Debtor prior to the Effective Date, without prejudice to Reorganized Debtor's rights under applicable non-bankruptcy law to modify, amend or terminate the foregoing arrangements.

12.4.   <u>Rights of Action</u>.  Except as otherwise expressly provided herein, any rights or causes of action (including, without limitation, any and all avoidance actions) accruing to Debtor shall remain assets of Reorganized Debtor.  Reorganized Debtor may pursue such rights of action, as appropriate, in accordance with what is in its best interests and for its benefit.

12.5.   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

**Tonkon Torp** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1       12.6.   <u>Withholding and Reporting Requirements</u>.  In connection with the

2  Plan and all instruments issued in connection therewith and distributions thereon, Debtor

3  and Reorganized Debtor shall comply with all withholding, reporting, certification, and

4  information requirements imposed by any federal, state, local, or foreign taxing

5  authorities, and all distributions hereunder shall, to the extent applicable, be subject to

6  any such withholding, reporting, certification, and information requirements.  Entities

7  entitled to receive distributions hereunder shall, as a condition to receiving such

8  distributions, provide such information and take such steps as Reorganized Debtor may

9  reasonably require to ensure compliance with such withholding and reporting

10  requirements, and to enable Reorganized Debtor to obtain the certifications and

11  information as may be necessary or appropriate to satisfy the provisions of any tax law.

12      12.7.   <u>Time</u>.  Unless otherwise specified herein, in computing any period

13  of time prescribed or allowed by the Plan, the day of the act or event from which the

14  designated period begins to run shall not be included.  The last day of the period so

15  computed shall be included, unless it is not a Business Day, in which event the period

16  runs until the end of the next succeeding day that is a Business Day.

17      12.8.   <u>Section 1146(c) Exemption</u>.  Pursuant to Section 1146(c) of the

18  Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or

19  the execution, delivery, or recording of an instrument of transfer pursuant to, in

20  implementation of, or as contemplated by the Plan; or the revesting, transfer, or sale of

21  any real property of Debtor or Reorganized Debtor pursuant to, in implementation of, or

22  as contemplated by the Plan; shall not be taxed under any state or local law imposing a

23  stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder

24  of deeds or similar official for any city, county, or governmental unit in which any

25  instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be

26  * * *

**Page 19 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

ordered and directed to accept such instrument without requiring the payment of any

documentary stamp tax, deed stamps, transfer tax, intangible tax, or similar tax.

     12.9.  <u>Severability</u>.  In the event any provision of the Plan is determined

to be unenforceable, such determination shall not limit or affect the enforceability and

operative effect of any other provisions of the Plan.  To the extent any provision of the

Plan would, by its inclusion in the Plan, prevent or preclude the Bankruptcy Court from

entering the Confirmation Order, the Bankruptcy Court, on the request of Debtor, may

modify or amend such provision, in whole or in part, as necessary to cure any defect or

remove any impediment to the confirmation of the Plan existing by reason of such

provision.

     12.10.  <u>Binding Effect</u>.  The provisions of the Plan shall bind Debtor,

Reorganized Debtor and all holders of Claims and Interests, and their respective

successors, heirs, and assigns.

     12.11.  <u>Recordable Order</u>.  The Confirmation Order shall be deemed to be

in recordable form, and shall be accepted by any recording officer for filing and

recording purposes without further or additional orders, certifications, or other supporting

documents.

     12.12.  <u>Plan Controls</u>.  In the event and to the extent any provision of the

Plan is inconsistent with the provisions of the Disclosure Statement, or any other

instrument or agreement contemplated to be executed pursuant to the Plan, the provisions

of the Plan shall control and take precedence.

     12.13.  <u>Effectuating Documents and Further Transactions</u>.  Debtor and

Reorganized Debtor shall execute, deliver, file, or record such contracts, instruments,

assignments, and other agreements or documents, and take or direct such actions as may

be necessary or appropriate to effectuate and further evidence the terms and conditions of

this Plan.

**Page 20 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

12.14.  <u>Saturday, Sunday or Legal Holiday</u>.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.15.  <u>Timing of Distributions</u>.  Notwithstanding anything to the contrary herein:  (a) any distribution required by the Plan to be made on the Effective Date in respect of a Claim shall be made as soon as practicable after (but in any event within 30 days of) the later of (i) the Effective Date and (ii) the date on which such Claim becomes Allowed and any other conditions to distribution with respect to such Claim shall have been satisfied; and (b) any distribution required by the Plan or any instrument issued pursuant to the Plan to be made on a date subsequent to the Effective Date shall be made on the later of (i) such date and (ii) as soon as practicable after (but in any event within 30 days of) the date on which the pertinent Claim becomes Allowed and any other conditions to distribution with respect to such Claim shall have been satisfied.

12.16.  <u>Final Order</u>.  Any requirement in the Plan for a Final Order may be waived by Debtor or Reorganized Debtor; provided, however, that nothing contained herein shall prejudice the right of any party in interest to seek a stay pending appeal with respect to such Final Order.

12.17.  <u>Event of Default; Remedy</u>.  Except as otherwise provided in the Plan or in the Confirmation Order, in the event Reorganized Debtor shall default in the performance of any of its obligations under the Plan, and shall not have cured such a default within 10 days after receipt of written notice of default from the Creditor or Member to whom the performance is due, then such Creditor or Member may seek an order from the Bankruptcy Court to compel such performance.  An event of default

* * *

**Page 21 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

1   occurring with respect to one Creditor, Claim or Member shall not be an event of default

2   with respect to any other Creditor, Claim or Member.

3                   DATED this 15th day of November, 2011.

4                             WESTERN COMMUNICATIONS, INC.

5

6                           By */s/ Gordon Black*
                                Gordon Black, President

7   Presented by:

8   TONKON TORP LLP

9

10   By */s/ Albert N. Kennedy*
        Albert N. Kennedy, OSB No. 82142

11         Michael W. Fletcher, OSB No. 010448
        Of Attorneys for Debtor

12

13   000646/00039/3174053v9

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 22 of 22** - DEBTOR'S PLAN OF REORGANIZATION (NOVEMBER 15, 2011)

# EXHIBIT 1

# TERM PROMISSORY NOTE
# BANK OF AMERICA

$_____

_____, \_\_\_\_\_
(the "<u>Effective Date</u>")

  For value received, Western Communications, Inc. ("Debtor") promises to pay to the order of the Bank of America, N.A. ("Creditor"), in lawful money of the United States of America, the principal sum of _____ Dollars ($_____) together with interest at the rate specified below.

  This Term Promissory Note ("Note") is executed and delivered in connection with and pursuant to that certain Debtor's Plan of Reorganization in Case No. 11-37319-elp11 confirmed on _____, \_\_\_\_\_ ("Plan").

  1. <u>Interest</u>.  This Note will bear interest from the Effective Date at a fixed rate of 4.5% per annum.

  2. <u>Maturity</u>.  This Note shall mature and be payable in full on _____, \_\_\_\_\_ (the "Maturity Date").  On the Maturity Date, all unpaid principal and all accrued and unpaid interest and other amounts owing under this Note shall be paid in full.

  3. <u>Principal and Interest Payments</u>.  Commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter through and including the 24th month following the Effective Date, Debtor will make interest-only payments on this Note.  Commencing on the first day of the 25th month following the Effective Date and continuing on the first day of each month thereafter until this Note has been paid in full, Debtor will make equal monthly amortizing payments of principal and interest on this Note based on a 30-year amortization schedule, with a balloon payment due 10 years after the Effective Date.

  4. <u>Prepayment</u>.  Debtor may prepay this Note without penalty in whole or in part at any time without the prior consent of Creditor.

  5. <u>Default</u>.  An "Event of Default" shall occur under this Note if Debtor fails to make any payment required by this Note within 10 days after such payment is due.

  6. <u>Remedies</u>.  Upon the occurrence of an Event of Default:

  (a) The entire unpaid principal balance of this Note, together with all accrued interest and other sums due under this Note, will upon demand by Creditor become immediately due and payable;

  (b) Creditor may exercise any right or remedy it has under this Note, the Plan, at law, in equity or otherwise; and

(c)     Creditor will be entitled to collect from Debtor all costs of collection, including reasonable attorney fees, incurred in connection with the collection of sums due under this Note.

The rights and remedies of Creditor under this Note are cumulative and not alternative.

7.     <u>Waivers</u>

(a)     No failure on Creditor's part to exercise any right or remedy under this Note, whether before or after an Event of Default, will constitute a waiver of the default, and no waiver of any past Event of Default will constitute a waiver of any other or future Event of Default. Without limiting the preceding, no failure to accelerate the debt evidenced by this Note after an Event of Default, no acceptance of a past due installment of interest, no acceptance of a late payment or a late charge, and no indulgence granted from time to time will be construed to waive Creditor's right to insist on prompt payment thereafter or will be deemed to be a novation of this Note, or waive such right of acceleration or any other right.

(b)     Debtor waives the benefit of any statute or rule of law or equity that would produce a result contrary to or in conflict with the preceding. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom such agreement is sought to be enforced.

(c)     Debtor waives presentment, protest, demand, diligence, notice of dishonor and of nonpayment and any other notice.

8.     <u>Governing Law</u>. This Note will be governed by and construed under the laws of the state of Oregon, excluding its choice of law rules.

9.     <u>Severability</u>. If any term or provision of this Note is held to be unenforceable, then that term or provision will be eliminated and the balance of this Note will be fully enforceable.

10.     <u>Parties in Interest</u>. This Note will bind Debtor and each of Debtor's successors and will inure to the benefit of Creditor and its successors and assigns.

11.     <u>Usury</u>. If any payment in the nature of interest or other charges under this Note is held to be in excess of the limits imposed by any applicable usury laws, then that amount held to be in excess will be considered payment of principal owing under this Note, and the indebtedness evidenced under this Note will be reduced by such amount so that the total liability for payments in the nature of interest or other charges will not exceed the applicable limits imposed by any applicable usury laws.

12.     <u>Attorneys' Fees</u>. If any action is brought with respect to this Note, or in any appeal therefrom, the prevailing party will be entitled to its reasonable attorneys' fees as determined by the court or courts in which the action or appeal is tried or heard.

13.     <u>Interpretation</u>. Section and other headings contained in this Note are for reference purposes only. The word "including" is deemed to be followed by the phrase "without

limitation."  No rule of construction or interpretation that disfavors the party drafting this Note or any of its provisions will apply to the interpretation of this Note.  Instead, this Note will be interpreted according to the fair meaning of its terms.

In Witness Whereof, Debtor has executed and delivered this Note as of the Effective Date.

DEBTOR:

WESTERN COMMUNICATIONS, INC.

By: _____

000646/00039/3215042v1

# EXHIBIT 2

# TERM PROMISSORY NOTE
## PAGE COOPERATIVE, INC.

$_____

_____, _____

(the "<u>Effective Date</u>")

For value received, Western Communications, Inc. ("Debtor") promises to pay to the order of the PAGE Cooperative, Inc. ("Creditor"), in lawful money of the United States of America, the principal sum of _____ Dollars ($_____) together with interest at the rate specified below.

This Term Promissory Note ("Note") is executed and delivered in connection with and pursuant to that certain Debtor's Plan of Reorganization in Case No. 11-37319-elp11 confirmed on _____, _____ ("Plan").

      1.    <u>Interest</u>.  This Note will ear interest from August 23, 2011 at a rate of 4.5% per annum.

      2.    <u>Maturity</u>.  This Note shall mature and be payable in full on _____, _____ ("Maturity Date").  On the Maturity Date, all unpaid principal, and all accrued and unpaid interest and other amounts owing under this Note, shall be paid in full.

      3.    <u>Principal and Interest Payments</u>.  This Note is payable by Reorganized Debtor in 20 equal quarterly payments of principal and interest (with payments due each March 31, June 30, September 30 and December 31), with the first quarterly payment due on the first day of the first calendar quarter following the Effective Date.

      4.    <u>Prepayment</u>.  Debtor may prepay this Note without penalty in whole or in part at any time without the prior consent of Creditor.

      5.    <u>Default</u>.  An "Event of Default" shall occur under this Note if Debtor fails to make any payment required by this Note within 10 days after such payment is due.

      6.    <u>Remedies</u>.  Upon the occurrence of an Event of Default:

      (a)    The entire unpaid principal balance of this Note, together with all accrued interest and other sums due under this Note, will upon demand by Creditor become immediately due and payable;

      (b)    Creditor may exercise any right or remedy it has under this Note, the Plan, at law, in equity, or otherwise; and

      (c)    Creditor will be entitled to collect from Debtor all costs of collection, including reasonable attorney fees, incurred in connection with the collection of sums due under this Note.

The rights and remedies of Creditor under this Note are cumulative and not alternative.

7.    <u>Waivers</u>

(a)    No failure on Creditor's part to exercise any right or remedy under this Note, whether before or after an Event of Default, will constitute a waiver of the default, and no waiver of any past Event of Default will constitute a waiver of any other or future Event of Default.  Without limiting the preceding, no failure to accelerate the debt evidenced by this Note after an Event of Default, no acceptance of a past due installment of interest, no acceptance of a late payment or a late charge, and no indulgence granted from time to time will be construed to waive Creditor's right to insist on prompt payment thereafter or will be deemed to be a novation of this Note, or waive such right of acceleration or any other right.

(b)    Debtor waives the benefit of any statute or rule of law or equity that would produce a result contrary to or in conflict with the preceding.  This Note may not be changed orally, but only by an agreement in writing signed by the party against whom such agreement is sought to be enforced.

(c)    Debtor waives presentment, protest, demand, diligence, notice of dishonor and of nonpayment and any other notice.

8.    <u>Governing Law</u>.  This Note will be governed by and construed under the laws of the state of Oregon, excluding its choice of law rules.

9.    <u>Severability</u>.  If any term or provision of this Note is held to be unenforceable, then that term or provision will be eliminated and the balance of this Note will be fully enforceable.

10.    <u>Parties in Interest</u>.  This Note will bind Debtor and each of Debtor's successors and will inure to the benefit of Creditor and its successors and assigns.

11.    <u>Usury</u>.  If any payment in the nature of interest or other charges under this Note is held to be in excess of the limits imposed by any applicable usury laws, then that amount held to be in excess will be considered payment of principal owing under this Note, and the indebtedness evidenced under this Note will be reduced by such amount so that the total liability for payments in the nature of interest or other charges will not exceed the applicable limits imposed by any applicable usury laws.

12.    <u>Attorneys' Fees</u>.  If any action is brought with respect to this Note, or in any appeal therefrom, the prevailing party will be entitled to its reasonable attorneys' fees as determined by the court or courts in which the action or appeal is tried or heard.

13.    <u>Interpretation</u>.  Section and other headings contained in this Note are for reference purposes only.  The word "including" is deemed to be followed by the phrase "without limitation."  No rule of construction or interpretation that disfavors the party drafting this Note or any of its provisions will apply to the interpretation of this Note.  Instead, this Note will be interpreted according to the fair meaning of its terms.

In Witness Whereof, Debtor has executed and delivered this Note as of the Effective Date.

DEBTOR:

WESTERN COMMUNICATIONS, INC.

By: _____

000646/00039/3215686v1

1          CERTIFICATE OF SERVICE

2                    I hereby certify that I served the foregoing **DEBTOR'S PLAN OF**
   **REORGANIZATION (NOVEMBER 15, 2011)** on the parties indicated as "ECF" on the
3  attached List of Interested Parties by electronic means through the Court's Case
   Management/Electronic Case File system on the date set forth below.

4
                    In addition, I served the foregoing on the parties indicated as "Non-ECF" on
5  the attached List of Interested Parties by mailing a copy thereof in a sealed, first-class
   postage prepaid envelope, addressed to each party's last-known address and depositing in the
6  U.S. mail at Portland, Oregon on the date set forth below.

7                    DATED this 15th day of November, 2011.

8                             TONKON TORP LLP

9
                             By /s/ Albert N. Kennedy
10                                Albert N. Kennedy, OSB No. 821429
                                  Michael W. Fletcher, OSB No. 010448
11                                Attorneys for Debtor

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 1 of 1** -   CERTIFICATE OF SERVICE

# LIST OF INTERESTED PARTIES

## *In re Western Communications, Inc.*
## U.S. Bankruptcy Court Case No. 11-37319-elp11

### ECF PARTICIPANTS:

- MICHAEL W FLETCHER michael.fletcher@tonkon.com, tammy.brown@tonkon.com
- BRAD A GOERGEN bgoergen@grahamdunn.com, dpurdy@grahamdunn.com
- ALBERT N KENNEDY al.kennedy@tonkon.com, leslie.hurd@tonkon.com;andy.haro@tonkon.com
- MARK D. NORTHRUP, mnorthrup@grahamdunn.com
- US Trustee, Portland USTPRegion18.PL.ECF@usdoj.gov

### NON-ECF PARTICIPANTS:

**TOP 20 UNSECURED CREDITORS**

PAGE Cooperative, Inc.
c/o John Snyder
700 American Ave., #101
King of Prussia, PA 19406

PAGE Cooperative, Inc.
c/o Lucian B. Murley, Atty.
222 Delaware Ave. #1200
POB 1266
Wilmington DE 19801-1266

City of Bend – Finance
c/o Sonia Andrews
POB 431
Bend, OR 97709

Bendtel, Inc.
POB 356
Bend, OR 97709

PDI Plastics, Inc.
5037 Pine Creek Dr.
Westerville, OH 43081

Schermerhorn Bros. Co.
POB 668
Lombard, IL 60148-0668

Cascade Natural Gas Corp.
POB 7608
Boise, ID 83707-9928

Traneoregon, Inc.
POB 23579
Portland, OR 97281

Publishing Group of America, Inc.
341 Cool Springs Blvd., #400
Franklin, TN 37067

Band-It Rubber Co.
1711 Delilah St.
Corona, CA 92879-1865

Global Electronic Services, Inc.
5325 Palmero Ct.
Buford, GA 30518

Lubcon Turmo Lubrication, Inc.
5460 33rd St., SE
Grand Rapids, MI 49512

ITD Print Solutions
POB 6205
Carson, CA 90749

Stanley Convergent Security
55 Shuman Blvd., #900
Naperville, IL 60563

Airfilco, Inc.
415 N Tillamook St.
Portland, OR 97227-1823

Databar, Inc.
2908 Meridian E #201
Edgewood, WA 98371-2111

All Press Parts & Equipment, Inc.
612 Shorehaven Lane
Oshkosh, WI 54904

Digital Technology International
1180 N Mountain Springs Pkwy
Springville, UT 84663

**OTHER**

SEC
Attn: Bankruptcy Counsel
5670 Wilshire Blvd., 11th Flr.
Los Angeles, CA 90036

000646/00039/3174053v9